505 A.2d 398

City of Pittsburgh, Civil Service Commission, Appellant *v.* Thomas E. Weger, Appellee.

Submitted on briefs September 25, 1985, to Judges MacPhail, Doyle and Barry, sitting as a panel of three.

*Richard J. Joyce,* Assistant City Solicitor, with him, *D. R. Pellegrini,* City Solicitor, for appellant.

No appearance for appellee.

OPINION BY JUDGE DOYLE, February 27, 1986:

The Civil Service Commission of the City of Pittsburgh (Appellant) appeals from a decision of the Court of Common Pleas of Allegheny County which reversed the Commission's disqualification of Thomas E. Weger (Appellee) from eligibility for a position as a police officer for the City of Pittsburgh (City).

Appellee was disqualified after a back x-ray revealed the existence of two or more "Schmorl's nodes" on his spine. The disqualification was upheld on appeal following two hearings before the Commission. Appellee then appealed to the court of common pleas, which reversed the Commission on the basis that it had determined Appellee's condition to be "a back injury risk factor disregarding orthopedic testimony to the contrary."

All applicants to the City police department are required to undergo a physical examination. Physical standards which must be met for acceptance have been outlined in Section 12 of Rule III of the Rules of the City Civil Service Commission. Section 12 (b)(10) provides as follows:

Evidence of a serious back injury, disc or back pathology, abnormal curvature, Pott's disease, anklyosis, osteomelitis, or other gross abnormalities will be disqualifying.

Conditions which are included in the term "other gross abnormalities" have been interpreted by the Commission's staff physicians to include, among other things, the presence of two or more "Schmorl's nodes." Evidence of this interpretation was introduced by the Commission in the form of a written interdepartmental memorandum. The Commission's medical expert, Dr. Danna Swan, testified that the interpretation had been adopted as an amalgamation of various opinions outlined in medical literature as well as input from various specialists. She stated that a controversy existed in the field regarding whether the existence of Schmorl's nodes alone indicated a serious risk of future back pathology or whether the risk existed only where the nodes could be attributed to certain causes. She stated that the existing statistics were presently inconclusive, but that more than one study indicated that the presence of the nodes alone indicated a weakened condition of connective tissue in the spine which was probably genetically acquired. She further stated that the presence of two or more Schmorl's nodes was the generally accepted industrial standard for disqualification from a job that was considered to be arduous as opposed to merely physically taxing.

Appellee introduced letters from his own medical expert, orthopod Jonathan E. Hottenstein, M.D., which stated an unequivocal opinion that Appellee's nodes were unaccompanied by any degenerative disc disease and had no correlation whatsoever with the development of a lower back problem in the future. Dr. Swan stated that she did not necessarily disagree with this opinion personally, but that the standard had been adopted after an analysis of conflicting opinions and that she did not believe the standard could be changed on a piecemeal basis.

We must agree with the Commission. Section 3 of the Policemen's Civil Service Statute provides that:

Each applicant for original appointment to any position in the competitive class in any bureau of police in any city of the second class shall undergo a physical examination, subsequent to a mental examination but prior to appointment, which shall be conducted by a commission composed of doctors of medicine appointed for that purpose by the mayor. Said commission shall certify to the civil service commission that the applicant is free from bodily or mental defects, deformity or disease that might incapacitate him from the performance of the duties of the position he is seeking.

Act of August 10, 1951, P.L. 1189, *as amended,* 53 P.S. §23532.

It is within the Commission's authority to establish standards for use as pre-employment qualifications in order to effectuate the intent of the statute, provided such standards are not arbitrary. *See Brletic v. Municipality of Monroeville,* 64 Pa. Commonwealth Ct. 431, 440 A.2d 686 (1982).

Appellee admits that due to his back condition he did not satisfy one of the physical standards adopted by the Commission. He does not contest the purpose of the standard, which is obviously to eliminate candidates with a bodily defect which might incapacitate them from the performance of their duties. In this situation, the burden fell on Appellee to present clear and convincing evidence of the unreasonableness of the challenged standard. *Brletic.* He did not meet this burden. On the contrary, the testimony of Dr. Swan clearly established that the standard had been adopted after a careful evaluation of various medical opinions and was consequently far from arbitrary.

Thus, although we appreciate the common pleas court's sympathy for Appellee's plight, we must conclude that the court's reversal of the Commission's decision, on the basis that Appellee presented expert testimony to controvert the Commission's position, constituted an error of law.

We will reverse the Court.

ORDER

Now, February 27, 1986, the Order of the Court of Common Pleas of Allegheny County, No. SA521 of 1983, dated February 1, 1984, is hereby reversed.